UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**VICTOR STAMPLEY**,                                 Case No.  **12-60732-13**

Debtor.

# MEMORANDUM OF DECISION

At Butte in said District this 13th day of November, 2012.

Pending in this Chapter 13 case are:  (1) Confirmation of Debtor's Amended Chapter 13 Plan; (2) Debtor's motion to void judicial lien of his ex-spouse Susan Clarion ("Clarion"); and (3) Debtor's Objection to Clarion's Proof of Claim No. 7[1].  A hearing on these matters was held at Missoula on October 11, 2012.  Clarion filed responses and appeared and testified, represented by attorney Reid J. Perkins ("Perkins") of Worden Thane P.C.  Debtor Victor Stampley ("Stampley") appeared and testified, represented by attorney Edward A. Murphy ("Murphy") of Missoula.  The Chapter 13 Standing Trustee Robert G. Drummond appeared.  The parties stipulated to admission of all their Exhibits ("Ex."), including Clarion's Ex. A, B, C, D, E, F, G, H, I, J, K, and Debtor's Ex. A, B, C, D, E, F, G, H, and I.  In addition the Court granted Debtor's request to take judicial notice of Debtor's Schedules and Statement of Financial Affairs.  At the conclusion of the parties' cases-in-chief the Court took the matters under advisement.  After review of the record and applicable law, these matters are ready for decision.  For the reasons set forth below Debtor's motion to avoid Clarion's judicial lien will be denied; Debtor's Objection

---

[1]The third ground for Debtor's Objection to Clarion's Proof of Claim No.7 was withdrawn by the Debtor's attorney Murphy at the hearing where he stated that he learned Debtor's homestead is located in Missoula County where Clarion's judgment was entered.

to Clarion's Proof of Claim No. 7 is overruled; and Clarion's objection to confirmation will be

sustained and confirmation denied[2].

This Court has exclusive jurisdiction of this Chapter 13 case under 28 U.S.C. § 1334(a).

Lien avoidance, allowance of claims, and confirmation of plans are core proceedings under 28

U.S.C. § 157(b)(2).

## FINDINGS OF FACT

Stampley is employed as a clinical social worker and a musician. He testified that he is

an independent contractor. He and Clarion were married in 1989 until they dissolved their

marriage in 2010. Clarion is employed as a registered nurse at St. Patrick's Hospital in Missoula.

Stampley has owned real property at Alberton, Missoula County, Montana, since 1978,

which he claims as a homestead and where he testified he has lived full time since 1989. Clarion

testified that they started living together on the homestead in 1989 in a house they built. She

testified that the house cost approximately $90,000 to build, including more than $30,000 which

was loaned by Clarion's father. The real property is located at 3505 W. Fork Petty Creek Road,

Alberton, Montana (the "homestead")[3]. Stampley testified that only his name is on the title for

the homestead, and that Clarion's name was not ever on the title. The Declaration of Homestead,

Debtor's Ex. H, was signed and recorded in Missoula County on February 21, 2012.

Stampley and Clarion filed a joint petition for dissolution of their marriage on August 12,

2012, in the Montana Fourth Judicial District Court, Missoula County, Cause No. DR-10-582.

---

[2]Debtor's attorney Murphy agreed at the hearing that the Plan needed further amendment because of the discrepancy between First Security Bank's Proof of Claim No. 6 and the Plan.

[3]The homestead is comprised of two tracts of 16.3 acres and 5.73 acres in Parcel 22, COS 1354, in the exhibits.

Clarion's Ex. A.  Both Clarion and Stampley were pro se in the dissolution proceeding, and both signed Clarion's Ex. A.  Clarion's Ex. A provides at the bottom of page 2 that Stampley is the owner of record of the homestead, and states at paragraph 9b on page 3:  "This real property should be distributed as follows:  The Husband should be awarded ownership of this real property."

Clarion testified that she earned approximately $27,000 per year at the time of the divorce.  Debtor's Ex. C is the parties' joint federal tax return for 2008.  Line 31 of Schedule C on Ex. C states Stampley's net profit from his counseling business as $23,948.  Debtor's Ex. D is the 2009 joint tax return, and Debtor made an offer of proof that Stampley's 2009 net profit from his counseling business was $29,984.  Debtor's Ex. E is Stampley's individual 2010 federal tax return, and it shows on Schedule C Stampley's net profit from his counseling business was $32,969.  On page 1 of Ex. E it states his total income at line 22 of $33,506, and line 37 states his adjusted gross income for 2010 as $25,050.

The divorce disclosure has a different amount for Stampley's income.  Clarion's Ex. F is the parties' "Final Declaration of Disclosure of Assets, Debts, Income, and Expenses" filed August 12, 2010, in DR-10-582.  Clarion's Ex. F states at page 4 that her income is $1,800 per month in wages or salary, and another $500 in self employment earnings.  On Stampley's Disclosure at page 4 his income is stated as $375 per month in rents, interest, dividends, and $5,166 in self employment earnings.  On rebuttal, Stampley testified under direct examination that he overstated his gross income on the Disclosure of Income because he was trying to obtain a mortgage loan.

The state district court filed on August 17, 2010, Debtor's Ex. G ("Findings of Fact,

3

Conclusions of Law and Final Decree of Dissolution") (the "Decree").  The Decree named Stampley the owner of record of the homestead on page 2 at paragraph 11.  On page 3 of the Decree the conclusion of law no. 3 states:  "Based on the duration of the marriage and on the parties' age, health, education, skills, and financial circumstances, the Petitioners' proposed division of property and debts is equitable."

On page 3 of the Decree the court dissolved the marriage, awarded the vehicles[4] to the parties, granted all right, title and interest in the homestead to Stampley, divided responsibility for debts between the parties[5], and concluded on page 5, paragraph 8 as follows:  "Other Provisions; Husband will pay $74,000 by 12/31/10.  Husband will maintain wife as beneficiary of S.G. Long investment accounts in his name, and of CUNA Death and Dismemberment and Life Insurance policies until 12/31/10, or until $74,000 is paid by husband to wife."  Debtor's Ex. G.  Clarion testified that Stampley paid her a total of $1,000 after the dissolution against this $74,000 debt.

Nothing in the Decree awarded or otherwise made any provision for alimony, maintenance or support to Clarion, and Stampley testified that he is not obligated to pay Clarion support.  Stampley testified that Clarion earns enough income as a registered nurse to support herself.  Clarion testified that she needs the $74,000 to live on, and that her child suffers from multiple sclerosis.  On cross examination Clarion admitted that her child is 40 years old and lives independently.

---

[4]The household furnishings and other personal property had already been divided. Debtor's Ex. G, p. 2, paragraph 13.

[5]The Decree gave Clarion responsibility for one debt to Capital One in the amount of $4,617, and gave Stampley responsibility for 8 debts exceeding $43,000 in aggregate amount.

An appraisal of the homestead, Debtor's Ex. I dated March 19, 2011, was performed for the purpose of obtaining a loan secured by a mortgage to Missoula Federal Credit Union.  Ex. I states an estimated value of the homestead based mostly on the sales comparison approach as $205,000.  Stampley testified that the house by itself has a value of $115,000.

Stampley filed his voluntary Chapter 13 petition on May 8, 2012, listing his homestead as his address.  He testified that he resided at the homestead at the time he filed his petition, and that he filed his petition because Clarion attempted execution of her judgment against the homestead.

Debtor filed his Schedules and SOFA on May 31, 2012.  Schedule A lists the homestead with a value of $205,000, encumbered by a secured claim in the amount of $25,074.74 which Schedule D identifies as First Security Bank.  Schedule D lists two other claims secured by vehicles, which Debtor testified were being paid outside his Plan.

Schedule B lists personal property, including at item 16 ("Accounts receivable") "Patient Account Receivable" in the amount of $6,000.  Stampley testified that the accounts receivable were difficult to value, but that approximately $4,000 of the accounts receivable were more than a half a year old.

Schedule C lists Debtor's exemptions.  No homestead exemption is claimed on Schedule C.  Schedule F lists unsecured nonpriority claims in the total amount of $179,341.63, the largest by far of which is Clarion's claim in the amount stated of $73,122.76.

Debtor filed his Chapter 13 Plan.  The Chapter 13 Trustee filed a consent to confirmation on June 11, 2012.  Objections to confirmation were filed by First Security Bank and by Clarion.

First Security Bank filed Proof of Claim No. 6 on June 20, 2012, and filed an amended Claim 6 on June 22, 2012.  Claim 6 asserts a claim in the amount of $25,340.91 secured by part

5

of the homestead.  First Security Bank objected to confirmation because the Plan failed to treat

its secured claim as required under § 1325(a)(5)(B).

The meeting of creditors was held pursuant to 11 U.S.C. § 341(a) on June 7, 2012.

Stampley was asked at the § 341 meeting about his accounts receivable and he stated that he had

outstanding accounts.

Clarion filed her Proof of Claim No. 7 on June 27, 2012.  Claim 7 asserts a secured claim

in the amount of $74,031.07 secured by real estate based on the Decree, and in addition asserts

priority status for the claim on the grounds it is a domestic support obligation under § 507(a)(1).

The attachments to Claim 7 include an amortization schedule reflecting the two $500 payments

which Clarion admitted receiving.

On September 5, 2012, Debtor filed his motion to avoid Clarion's judicial lien, his

Objection to Clarion's Proof of Claim No. 7 and his Amended Plan.  Debtor's Objection to

Clarion's Claim 7 contends that the claim is not a domestic support obligation but rather a

property division, and that the homestead has always been in his name exclusively.  He moves to

avoid Clarion's judicial lien based on the Decree under 11 U.S.C. § 522(f)(1), and argues that the

lien impairs his homestead exemption claimed under Mont. Code Ann. § 70-32-201[6].

Debtor's Amended Plan proposes monthly payments in the sum of $750 for 60 months.

Paragraph 2(b) lists only First Security Bank's secured claim in the amount of $25,074.74, which

is less than the amount stated on Proof of Claim No. 6[7].  Clarion's claim is not provided for

---

[6]No homestead exemption is claimed on Schedule C.

[7]Murphy agreed at the hearing that Debtor's Plan would need further amendment to correct the amount of First Security Bank's allowed secured claim.

under paragraph 2(b) ("Impaired Secured Claims"), nor at paragraph 2(d) ("Domestic Support

Obligations"), nor at 2(e) ("Priority Claims").  Paragraph 2(g) ("Liquidation Analysis") states

that the total amount distributed to unsecured claims, including priority claims, would be

$10,000.

Clarion objects to confirmation on the grounds that the Plan fails to pay her claim in full

either as a domestic support obligation under 11 U.S.C. § 1322(a)(2) and § 507(a)(1), or as a

secured claim under § 1325(a)(5) based on entry of the Decree of Dissolution.  Clarion also

objects that the Plan does not satisfy the "best interest of creditors" requirement of § 1325(a)(4)

because Debtor failed to list additional assets in the form of accounts receivables in his

Schedules, and that the Plan is not proposed in good faith under § 1325(a)(3).

Stampley testified that his Amended Plan complies with the Code and that he is capable

of making the payments due under the Plan.

## DISCUSSION

### I.  Motion to Avoid Lien – § 522(f)(1)(A).

Debtor moves to avoid Clarion's judicial lien, which arose from the Decree of

Dissolution in DR-10-582, under § 522(f)(1)(A) on the grounds that it impairs an exemption to

which the Debtor is entitled under § 522(b).  The Court notes that Debtor's Schedule C lists no

claim of homestead exemption, although his motion asserts a homestead exemption claimed

under MONT. CODE ANN. § 70-32-201.  Amendment of schedules by a debtor is liberally allowed

pursuant to F.R.B.P. 1009(a) as a matter of course at any time before the case is closed.  *Arnold*

*v. Gill (In re Arnold)*, 252 B.R. 778, 784 (9th Cir. 2000), (citing *Martinson v. Michael*, 17 Mont.

B.R.  192, 198, 163 F.3d 526, 529 (9th Cir. 1998)).  Therefore, assuming the Debtor amends his

Schedule C to claim a homestead exemption, the Court will proceed to the merits of Debtor's

motion.

Section 522(f)(1)(A) provides that a debtor:

may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is-

(A) a judicial lien, other than a judicial lien that secures a debt of a kine that is specified in section 523(a)(5) ....

*In re Chiu*, 304 F.3d 905, 907 (9th Cir. 2002); *In re Quane*, 16 Mont. B.R. 475, 476-77 (Bankr. D.

Mont. 1998).

The Ninth Circuit explained:

The purpose of § 522(f)(1) is to provide relief for an overburdened debtor. *Farrey v. Sanderfoot*, 500 U.S. 291, 297-98, 111 S.Ct. 1825, 1829-30, 114 L.Ed.2d 337 (1991) (citing H.R.Rep. No. 95-595, at 126-27 (1977), U.S. Code Cong. & Admin. News 5963, 6087-88). "[A] principal reason Congress singled out judicial liens was because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts." *Id.*

*Chiu*, 304 F.3d at 908.

*Chiu* repeated the Ninth Circuit's analysis that "under § 522(f)(1) a debtor may avoid a

lien if three conditions are met:  (1) there was a fixing of a lien on an interest of the debtor in

property; (2) such lien impairs an exemption to which the debtor would have been entitled; and

(3) such lien is a judicial lien." *Id.*, quoting *In re Catli*, 999 F.2d 1405, 1406 (9th Cir. 1993);

*Quane*, 16 Mont. B.R. at 477.  Condition 3 is undisputed that Clarion's lien arising from the

Decree of Dissolution is a judicial lien.  Condition 2 would be met and the Debtor entitled to a

homestead exemption if he amends his Schedule C.  The decision hinges on Condition 1 –

whether there was a fixing of a lien on an interest of the debtor in property.

8

In *Quane* this Court considered § 522(f)(1) and the decision of the United States Supreme

Court in *Farrey v. Sanderfoot*, 500 U.S. at 297-301, as applied under Montana statutes governing

division of property in a dissolution of marriage.  This Court concluded, announcing the rule in

this District, "under the dissolution law of the State of Montana – where all prior interests in

marital property are distinguished and new interests are created, as read in conjunction with the

holding in *Farrey*, a judicial lien stemming from a dissolution proceeding does not fix on an

interest of the debtor which existed prior to the dissolution, and is thus not avoidable under 11

U.S.C. § 522(f)(1)." *Quane*, 16 Mont. B.R. at 480-81.

Debtor argues that only his name is on the title to the homestead, and Clarion's name was

never on the title.  That is irrelevant under Montana statutes.  As stated in *Quane*:

> MONT. CODE ANN. § 40-4-202(3) provides:  "Each spouse is considered to have a
> common ownership in marital property that vests immediately preceding the entry
> of the decree of dissolution. . .  The extent of the vested interest must be
> determined and made final by the court pursuant to this section."  MONT. CODE
> ANN. § 40-4-402(1) further provides that the court "shall ... finally equitably
> apportion between the parties the property and assets belonging to either or both,
> however, and whenever acquired and whether the title thereto is in the name of the
> husband or wife or both."  This is precisely what the State court decree did – it
> finally and equitably apportioned both the marital assets and the marital debts.

*Quane*, 16 Mont. B.R. at 478.

The above-quoted Montana statutes have not changed since *Quane*.  As in *Quane*, in the

instant case the state court in Debtor's Ex. G, the Decree of Dissolution, at page 3 granted

Stampley all right, title and interest in the homestead.  Just as in *Quane* and *Farrey*, the grant of

the interest in the homestead occurred simultaneously with the fixing of the lien in favor of

Clarion, and so the lien did not "fix" to a pre-existing property interest and may not be avoided

under § 522(f)(1)(A).  16 Mont. B.R. at 478.  The Supreme Court wrote in *Farrey*:  "Section

9

522(f)(1) does not state that any fixing of a lien may be avoided; instead, it permits avoidance of the 'fixing of a lien on an interest of the debtor.' If the fixing took place before the debtor acquired that interest, the 'fixing' by definition was not on the debtor's interest." *Farrey*, 500 U.S. at 298.

What the Supreme Court described in *Farrey* applies equally here: "The divorce court awarded the lien to secure an obligation the court imposed on the husband in exchange for the court's simultaneous award of the wife's homestead interest to the husband. We agree with Judge Posner that to permit a debtor in these circumstances to use the Code to deprive a spouse of this protection would neither follow the language of the statue nor serve the main goal it was designed to address." *Quane*, 16 Mont. B.R. at 480, quoting *Farrey*, 500 U.S. at 301.

This Court continues to follow the rule stated in *Quane,* that Clarion's judicial lien stemming from the dissolution proceeding does not fix on an interest of the Debtor which existed prior to the dissolution, and is thus not avoidable under § 522(f)(1)(A). 16 Mont. B.R. at 481. Accordingly, Debtor's motion to avoid Clarion's judicial lien arising from the Decree of Dissolution will be denied under the rule stated in *Quane*. *Id.*

## II. Debtor's Objection to Clarion's Proof of Claim No. 7.

As a result of the above discussion and denial of Debtor's motion to avoid Clarion's lien under § 522(f)(1), it follows that Debtor's Objection to Clarion's secured claim must be overruled. Clarion's Proof of Claim No. 7 asserts a secured claim, and a priority claim. Under MONT. CODE ANN. § 40-4-133, after the hearing the district court "shall enter the final judgment dissolving the marriage." The Decree of Dissolution shown at Debtor's Ex. G is such a judgment. Under § 40-3-134, entry of the final judgment constitutes a final adjudication of the

rights of the parties with respect to marriage and property rights.

From the time of filing, a judgment "becomes a lien upon all real property of the judgment debtor that is not exempt from execution in that county and that is either owned by the judgment debtor at the time or after acquired ...." § 25-9-302(1). At the hearing Murphy withdrew Debtor's Objection to Clarion's secured claim which had been based on the property not being located in Missoula County. The only other ground for Debtor's objection was that he had moved to avoid Clarion's judgment lien under § 522(f)(1), and with that motion being denied there is no other ground to object to Clarion's secured claim. As a consequence Proof of Claim No. 7 is allowed as a secured claim.

The parties dispute whether Clarion's Claim 7 should be allowed as a priority claim as a domestic support obligation. However, based on the Court's decision above to allow Clarion's claim as a secured claim, Debtor's Objection to Clarion's priority claim is moot.

At the hearing Murphy admitted that Debtor's Amended Plan cannot be confirmed because it does not treat the secured claim of First Security Bank in the amount stated in Proof of Claim in Proof of Claim No. 6. For the same reason, confirmation of Debtor's Amended Plan must be denied because paragraph 2(b) makes no provision of Clarion's allowed secured claim as required under § 1325(a)(5)(B)(ii) which provides that the plan provides that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of the claim." As a result of the above-discussed denial of Debtor's motion to avoid Clarion's judicial lien, Clarion's Proof of Claim No. 7 is allowed as a secured claim in the amount of $74,031.07, and confirmation of Debtor's Amended Plan must be denied regardless of whether it is a domestic support obligation in addition to being an allowed

secured claim.  Debtor's Objection to Clarion's priority claim is moot.

Anther reason occurs to the Court why it is unnecessary to determine whether Clarion's claim is based on a domestic support obligation, besides the finding that it is an allowed secured claim which must be paid in full under § 1325(a)(5)(B)(ii) regardless of priority.  Whether Clarion's claim is based upon a domestic support obligation entitled to priority under § 507, or whether it arises instead from a property division from the divorce, in either instance her claim is excepted from discharge, either under 11 U.S.C. § 523(a)(5) for domestic support obligation, or under § 523(a)(15)[8].  As such, Clarion's claim is not dischargeable under 11 U.S.C. § 1328(a) or (b).

The result of such nondischargeability is that, even if Clarion did not have an allowed secured claim secured by her judicial lien from the Decree of Dissolution, and if Clarion somehow prevailed in showing that Clarion's claim is not a domestic support obligation, she still would have a nondischargeable claim against the Debtor in the amount of $74,031.07.  The Amended Plan provides only for payment of a total of $10,000 to unsecured claims.  Debtor has not explained why the Court should allow the automatic stay to remain in place for the 60 month plan term to prevent Clarion from collecting a nondischargeable debt which is not paid under Debtor's plan, while interest on such debt continues to accrue.  Accordingly,

**IT IS ORDERED** a separate Order shall be entered in conformity with the above:  (1) denying Debtor's motion to avoid lien (Dkt. 29); overruling Debtor's Objection to Clarion's Proof of Claim No. 7 (Dkt. 30); denying confirmation of Debtor's Amended Plan (Dkt. 31); and

---

[8]Excepting debts "to a spouse . . . and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce . . . or in connection with a . . . divorce decree....

granting the Debtor ten days to file a further amended plan providing for payment of Clarion's

allowed secured claim as required under § 1325(a)(5)(B)(ii).


BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana